**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ALLEN DEAN WASHBURN,

        **Plaintiff,**

        **v.**                          **CASE NO. 26-3021-JWL**

TINA MILLER,

        **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff Allen Dean Washburn is hereby required to show good cause, in writing to the undersigned, why his court access claim should not be dismissed for failure to state a claim, and why his request for compensatory damages should not be barred by 42 U.S.C. § 1997e(e). The Court finds that the proper processing of Plaintiff's remaining claims cannot be achieved without additional information from appropriate Saline County Jail officials.

## I. Nature of the Matter before the Court

Plaintiff filed this action on January 13, 2026, in the District Court of Saline County, Kansas. (Doc. 1–2.) The matter was removed to this Court on February 6, 2026, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) Plaintiff is in custody at the Saline County Jail in Salina, Kansas ("SCJ"). On March 2, 2026, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 8). The Court's screening standards are set forth in the Court's MOSC.

1

Plaintiff submitted his Amended Complaint on the Court-approved form, but in the spaces for setting forth his counts and supporting facts he merely refers to his "Motion to Show Cause" (Doc. 7) that he submitted along with his Amended Complaint.  Plaintiff names Tina Miller as the sole defendant in his Amended Complaint and seeks $300,000 in damages.  (Doc. 8, at 5.)

Plaintiff claims that Defendant Miller denied him indigent legal supplies, legal copies, and law library access.  (Doc. 7, at 1.)  He claims that this caused him delay and blocked him from the courts, "including being able to mail forms for this case denying [his] due process rights."  *Id*. Plaintiff claims that he has "several cases including this one," and that he does not have enough envelopes and paper to communicate with the courts.  *Id*.  He states that he cannot mail a writ of habeas corpus and an application to proceed without payment for quite some time.  *Id*.  at 2.

Plaintiff claims that Defendant Miller is in charge of diets at the SCJ and she took him off of his religious diet, forcing him to eat pork, processed food, and unclean food, which is against his Jewish religion.  *Id*.at 1.  Plaintiff also claims that he is banned from all religious services because of an incident where Plaintiff was punished over a marker that he did not steal.  *Id*. at 2. Plaintiff claims he had no disciplinary hearing and was told he was permanently banned.  *Id*. Plaintiff claims he was punished as a pretrial detainee for writing a grievance and was sent to segregation.  *Id*.

## II.  DISCUSSION

### 1.  Court Access

Plaintiff claims that Defendant Miller's refusal to give him enough indigent legal supplies causes delays and restricts his due process rights.  It is well-established that a prison inmate has a constitutional right of access to the courts.  However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice

arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff claims that he cannot mail a writ of habeas corpus and an application to proceed without payment for quite some time. As set forth below, Plaintiff's state criminal case is currently pending and he has entered a plea agreement. He does not explain why he is unable to mail a writ of habeas corpus or how he was hindered in his efforts to pursue a non-frivolous legal claim.

3

Plaintiff alleges that he was denied indigent legal supplies, legal copies, and law library access.  Plaintiff has not shown an actual injury.  Plaintiff makes the bald conclusion that this caused him delay in this case and others.  The deadline for Plaintiff to respond to the MOSC or to file an  amended complaint in this case is April 6, 2026.  However, Plaintiff filed his response and Amended Complaint on March 16, 2026—21 days before the deadline.  *See Collins v. Cline*, 2009 WL 1862429, at *1 (D. Kan. 2009) (finding that where plaintiff alleged that he was not provided legal indigent supplies, plaintiff identified no actual prejudice to his litigation of a non-frivolous claim, and finding that "as evidenced by the instant pleading," plaintiff was clearly able to send legal mail to the courts).  Although Plaintiff has filed eleven cases in this Court, the instant case is the only case that remains pending.[1]  All other cases are closed.  All but two cases were closed during and before 2023.   The two cases closed in 2025 and 2026 were against the Social Security Administration.  *See* Case Nos. 25-4013 and 25-4040.

The Court noted in the MOSC that an online Kansas district courts records search showed that Plaintiff's state criminal proceedings were ongoing.  *See Kansas v. Washburn*, Case No. SA-2025-CR-000715 (District Court of Saline County, Kansas).  The docket now reflects that the state court entered an Order Accepting Plea on March 5, 2026.  *Id*.  On that same day, the state court entered an Order Allowing Furlough, providing for the transportation of Plaintiff from the SCJ to enter inpatient treatment on April 8, 2026.  *Id*.

Plaintiff is represented by counsel in his criminal case.  *Id*.  The Tenth Circuit has found that whether or not a party is represented by counsel or proceeding pro se "is important because a court-access claim is necessarily intertwined with the assistance *vel non* of counsel."  *Carr v. Zwally*, 760 F. App'x 550, 556 (10th Cir. 2019) (unpublished) (citing *United States v. Taylor*, 183

---

[1] *See* Case Nos. 17-3107, 17-3108, 17-3109, 17-3113, 17-3172, 18-3001, 18-3002, 23-3027, 25-4013, and 25-4040.

F.3d 1199, 1204 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library."); *accord Lewis v. Clark*, 577 F. App'x 786, 796–97 (10th Cir. 2014) (unpublished) (affirming dismissal of court-access claim because prisoner was represented by counsel in underlying criminal case)).

The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 350–51 (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)).  The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research."  *Id*. at 354, 360; *see also Muhammad v. Collins*, 241 F. App'x 498, 499 (10th Cir. 2007) (unpublished) (citations omitted) ("Photocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress."); *Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006) (unpublished) (stating that a prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when there are suitable alternatives, and plaintiff had a reasonable alternative to photocopying his motions—he could have produced hand-written copies of his motions) (citations omitted).  Plaintiff should show good cause why his court access claim should not be dismissed for failure to allege an actual injury.

### 2.  Access to Religious Services and Religious Diet

"To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)).  Our Circuit has

articulated the following test to determine when the government places a substantial burden on a

plaintiff's free exercise of religion:

> The government substantially burdens a person's religions exercise ... when it (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."

*Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (unpublished) (quoting

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010). In *Strope*, the Tenth Circuit

reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim). We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (unpublished) (citing *Abdulhaseeb*,

600 F.3d at 1321). In sum, mere inconvenience, negligence, and isolated or sporadic incidents are

not sufficient to show a substantial burden.

The Court found in the MOSC that Plaintiff failed to provide any factual allegations

regarding which services he sought to participate in, when he made the request, or who denied his

request, and directed him to add factual support for this claim in any amended complaint that he

files. In his Amended Complaint, he alleges that Defendant Miller took Plaintiff off of his religious

diet, forcing him to eat pork, processed food, and unclean food, which is against his Jewish

6

religion.  Plaintiff also claims that he is banned from all religious services over an incident where Plaintiff was punished over a marker that he did not steal.

The Court finds that the proper processing of Plaintiff's free exercise claim cannot be achieved without additional information from appropriate SCJ officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate SCJ officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### 3.  Punishment

 "[T]he Fourteenth Amendment 'prohibits *any* punishment' of a pretrial detainee without due process."  *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (unpublished) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment)).  "[A] showing of an expressed intent to punish on the part of detention facility officials"—standing alone—is sufficient to demonstrate "the disability is imposed for the purpose of punishment."  *Id*. (citing *see Bell*, 441 U.S. at 538; *see also Blackmon*, 734 F.3d at 1241).  Intentionally punishing a pretrial detainee by placing him on disciplinary status or in disciplinary segregation without giving him an opportunity to be heard violates his due process rights.  *Id*.

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained."  *Bell*, 441 U.S. at 540.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute

unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id*. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*. The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

The Court found in the MOSC that Plaintiff suggested that he was disciplined for taking a marker and for abusing the grievance system, but failed to allege whether or not he received a punishment or who was responsible. In his Amended Complaint, he alleges that he was sent to segregation without a hearing and Defendant Miller is responsible. The Court finds that the proper processing of Plaintiff's due process claim cannot be achieved without additional information from appropriate SCJ officials, and this claim should also be included in the *Martinez* Report.

### 4. Relief

Plaintiff seeks $300,000 in compensatory damages and has not sought injunctive relief. Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id*. (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)). Plaintiff should show good cause why his request for compensatory damages is not barred by § 1997e(e).

### III. Response Required

Plaintiff is required to show good cause why his court access claim should not be dismissed and why his request for compensatory damages should not be barred by 42 U.S.C. § 1997e(e). Failure to respond by the deadline may result in dismissal of his court access claim without further notice for failure to state a claim. Because the Order Allowing Furlough in his state criminal case suggests that Plaintiff will be transferred to inpatient treatment on April 8, 2026, Plaintiff should seek an extension of time if he is unable to respond prior to April 27, 2026.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 27, 2026**, in which to show good cause, in writing to the undersigned, why Plaintiff's court access claim should not be dismissed for the reasons stated herein. Plaintiff should also show good cause why his request for compensatory damages should not be denied for the reasons stated herein.

**IT IS FURTHER ORDERED** that that**:**

(1)     The SCJ officials shall submit the *Martinez* Report by **April 27, 2026.**  Upon the filing of that Report, the Court will screen the remaining claims in Plaintiff's Amended Complaint.  If any claim survives screening, the Court will enter a separate order setting an answer deadline.

9

(2) Officials responsible for the operation of the SCJ are directed to undertake a review of the subject matter of the remaining claims in the Amended Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the SCJ officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The SCJ officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included. The SCJ officials shall redact and/or mute audio for any personal identifiers included in any video or recording submitted.

(5) Authorization is granted to the SCJ officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     With the exception of Plaintiff's response to the order to show cause in this Memorandum and Order, no motion or other document addressed to the Amended Complaint shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the remaining claims in the Amended Complaint.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Saline County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the Saline County Sheriff may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendant, the Saline County Sheriff, and the Saline County District Attorney's Office.

**IT IS SO ORDERED**.

**Dated March 26, 2026, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**