**FILED**
**U.S. District Court**
**District of Kansas**
06/03/2026
**Clerk, U.S. District Court**
By:__SND__ **Deputy Clerk**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALLEN DEAN WASHBURN,

      **Plaintiff,**

      v.                                       **CASE NO. 26-3021-JWL**

TINA MILLER,

      **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff filed this action on January 13, 2026, in the District Court of  Saline County, Kansas.  (Doc. 1–2.)  The matter was removed to this Court on February 6, 2026, pursuant to 28 U.S.C. §§ 1441 and 1446.  (Doc. 1.)  Plaintiff is in custody at the Saline County Jail in Salina, Kansas ("SCJ").  On March 2, 2026, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC.  Plaintiff was also given the opportunity to file an amended complaint to cure the deficiencies.  Plaintiff filed an Amended Complaint (Doc. 8), and on March 26, 2026, the Court entered a Memorandum and Order (Doc. 9) ("M&O") screening the Amended Complaint.  The Court granted Plaintiff until April 27, 2026, in which to show good cause why his court access claim should not be dismissed for the reasons stated in the M&O, and to also show good cause why his request for compensatory damages should not be barred by 42 U.S.C. § 1997e(e).

The Court also found in the M&O that the screening of Plaintiff's free exercise and due process claims could not be achieved without additional information from appropriate SCJ officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935

1

F.2d 1106 (10th Cir. 1991).  Accordingly, the Court ordered the appropriate SCJ officials to prepare and file a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 9, at 7.)  The *Martinez* Report (Doc. 11) (the "Report") has now been filed.  The Court's screening standards are set forth in the Court's MOSC.

## I.  Court Access Claim

The Court ordered Plaintiff to show good cause why his court access claim should not be dismissed for failure to allege an actual injury.  The deadline to respond was April 27, 2026.  The M&O provides that "[f]ailure to respond by the deadline may result in dismissal of his court access claim without further notice for failure to state a claim." (Doc. 9, at 9.)  Plaintiff failed to respond by the deadline and has failed to show good cause why his court access claim should not be dismissed for the reasons set forth in the M&O.  Therefore, Plaintiff's court access claim is dismissed for failure to state a claim.

## II.  Compensatory Damages

Plaintiff seeks $300,000 in compensatory damages and has not sought injunctive relief. (Doc. 8, at 5.)  The Court found in the M&O that Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d

869, 876 (10th Cir. 2001).  "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."  *Id*. (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).  Plaintiff was ordered to show good cause why his request for compensatory damages is not barred by § 1997e(e).  Plaintiff has failed to respond by the Court's deadline and has failed to show good cause why his request for compensatory damages is not barred by § 1997e(e).  Therefore, Plaintiff's request for compensatory damages is denied.

### III.  Remaining Claims

The Court found that the proper processing of Plaintiff's due process claim and claim regarding his access to religious services and religious diet, could not be achieved without additional information from SCJ officials.  The Court ordered a *Martinez* Report on these claims. The Report has now been filed.

### A.  Plaintiff's Allegations

The Court screened Plaintiff's original Complaint and found in the MOSC that Plaintiff failed to allege how Defendant Miller personally participated in the deprivation of his constitutional rights and failed to provide any factual allegations regarding which services he sought to participate in, when he made the request, or who denied his request, and directed him to add factual support for this claim in any amended complaint that he files.  (Doc. 6, at 4, 12.)  The Court also found that although Plaintiff suggests that he was disciplined for taking a marker and for abusing the grievance system, he failed to allege whether or not he received a punishment or who was responsible.  *Id*. at 13.  The Court directed Plaintiff to add factual support in any amended complaint that he files.  *Id*.

Plaintiff submitted his Amended Complaint on the Court-approved form, but in the spaces

for setting forth his counts and supporting facts he merely refers to his "Motion to Show Cause" (Doc. 7) that he submitted along with his Amended Complaint. Plaintiff names Tina Miller as the sole defendant in his Amended Complaint and seeks $300,000 in damages. (Doc. 8, at 5.)

Plaintiff claims in his Amended Complaint that Defendant Miller is in charge of all diets at the SCJ and she took him off of his religious diet, forcing him to eat pork, processed food, and unclean food, which is against his Jewish religion. (Doc. 7, at 1.) Plaintiff also claims that he is banned from all religious services because of an incident where Plaintiff was punished over a marker that he did not steal. *Id*. at 2. Plaintiff claims he had no disciplinary hearing and was told he was permanently banned. *Id*. Plaintiff claims he was punished as a pretrial detainee for writing a grievance and was sent to segregation. *Id*.

## B. The Report

The SCJ officials were directed to file a *Martinez* report on Plaintiff's remaining claims. The Report has been filed, and provides that:

> **A. Facts regarding discipline for stealing a marker.**
>
> 1. Sergeant Tina Miller is the SCDC's Programs and Classification Coordinator, and is responsible for establishing programs and activities for the inmates to participate in while they are in custody. (Miller Affidavit, ¶ 1).
> 2. On November 21, 2025, Sergeant Miller brought a group of inmates, including Washburn, to the multipurpose room to color bookmarks as a privilege for taking care of library books. When the activity ended, Sergeant Miller instructed the inmates to leave all of the markers behind and follow Deputy Leazer to the library. Thereafter, she counted the markers and verified one black marker was missing. Sergeant Miller notified Deputy Leazer, and Deputy Leazer located the marker hidden in a library book by Mr. Washburn. As a result, Sergeant Miller determined Washburn had intentionally ignored an instruction and he was charged with violating Inmate Handbook Policy 2.8, "Fail to Perform Task," and as a result, he was restricted from participating in programs during the remainder of his confinement. (Miller Affidavit, ¶ 6; Miller Affidavit, Ex. 3).
> 3. Although Washburn is restricted from participating in programs, which includes church service in the multi-purpose room, he remains able to

obtain and utilize religious texts, access religious materials on his table,[1] meet with clergy, or otherwise exercise his religion if he so chooses. (Miller Affidavit, ¶ 7).

**B. Facts regarding religious diet.**

4. On November 7, 12, and 15, 2025, Washburn submitted requests for a religious diet, stating that he was changing his religion to Jewish. This request was approved on November 17, 2025. (Miller Affidavit, ¶¶ 2, 5; Affidavit Ex. 1).

5. The Saline County Detention Center's "Inmate Request for Special Diet Form," which Washburn signed, lists examples of not following a special diet that include: (1) trading food from the special diet for regular food; (2) giving away any of the special diet; (3) eating food/drinking liquids not in accordance with the special diet; (4) ordering commissary items not in accordance with the special diet; and (5) saving food and saving food in non-kosher containers. (Miller Affidavit, ¶ 3; Miller Affidavit Ex. 1).

6. By signing the "Inmate Request for Special Diet Form," Washburn acknowledged he "underst[oo]d that if [he did] not follow the requested special diet, it will be removed without notice and [he] will be given regular meals." (Miller Affidavit, ¶ 4; Miller Affidavit Ex. 1).

7. On December 2, 2025, Sergeant Miller received three (3) separate incident reports documenting three (3) separate incidents of Washburn violating the requested special diet, each on December 2, 2025. (Miller Affidavit, ¶¶ 9, 10, 11; Miller Affidavit Exs. 5, 6, 7).

8. As a result of Washburn's third violation of the religious meal diet rules, he was removed from that program on December 3, 2025. (Miller Affidavit, ¶ 13; Miller Affidavit Ex. 9).

9. Washburn has never been forced to eat pork at the SCDC because the SCDC does not serve pork to any inmates, whether on a special diet or a regular diet. (Miller Affidavit, ¶ 15).

**C. Facts regarding Washburn's discipline for abusing the grievance system.**

10. On January 8, 2026 at approximately 9:26 a.m., Inmate Washburn submitted a grievance regarding his access to legal envelopes and paper. (Ginn Affidavit, ¶ 3; Ginn Affidavit Ex. 1).

11. At approximately 9:28 a.m., on January 8, 2026, Deputy Brandt responded that Washburn was being provided legal supplies pursuant to SCDC policy and if he wanted additional supplies he could request money to purchase additional supplies. Deputy Brandt further advised Washburn that further requests for paper and

---

[1] It is not clear whether this is a typo and was meant to reference Plaintiff's tablet instead of table.

envelopes outside the allotted amount would result in disciplinary action. (Ginn Affidavit, ¶ 3; Ginn Affidavit Ex. 1).

12. At approximately 2:40 p.m. on January 8, 2026, Washburn submitted another request for legal supplies. (Ginn Affidavit, ¶ 4; Ginn Affidavit Ex. 2).

13. At approximately 3:40 p.m. on January 8, 2026, Deputy Brandt served [Washburn][2] with notification of a major rules violation for continuing to put in requests after being told not to put in any more on a resolved matter. (Ginn Affidavit, ¶ 5; Ginn Affidavit Exs. 4, 5).

14. On January 13, 2026, [Washburn] appealed to Deputy Myers, who reviewed the charge, found [Washburn] to be guilty, and imposed discipline of 10 days in disciplinary segregation as a result. (Ginn Affidavit, ¶ 6; Ginn Affidavit Ex. 6).

15. On January 14, 2026, Deputy Ginn conducted an appeal for Washburn from Deputy Myers's findings, and based on his review of the time stamped requests/grievances, decided to keep the original decision as decided by the hearing officer of 10 days disciplinary segregation. (Ginn Affidaivt, ¶ 7; Ginn Affidavit Ex. 7).

(Doc. 11, at 2–4.)

## C. Free Exercise Claim

"To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)).  Our Circuit has articulated the following test to determine when the government places a substantial burden on a plaintiff's free exercise of religion:

> The government substantially burdens a person's religions exercise ... when it (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."

*Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (unpublished) (quoting

---

[2] Although the Report and Affidavit refer to "Washington," it is clear from the attached exhibits that the notification and appeal relate to Plaintiff Washburn.  (Doc. 11–2, at 7–10.)

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010).

The Report includes the Affidavit of Tina Miller, in which she declares that on December 2, 2025, she received three separate incident reports documenting three separate incidents where Plaintiff violated the terms for his special diet. (Doc. 11–1, at 2–3, at ¶¶ 9–11.) The first incident involved Plaintiff eating food/drinking liquids not in accordance with the special diet. *Id*. at ¶ 9. The second incident involved Plaintiff giving away a portion of his special diet to another inmate. *Id*. at ¶ 10. The third incident involved Plaintiff receiving food from another inmate that was not in accordance with his special diet. *Id*. at ¶ 11. The incident reports for each violation are attached as exhibits to Miller's affidavit. *See* Exhibits 5, 6, 7, at Doc. 11–1, at 12–14. As a result of Plaintiff's third violation of the special diet rules, he was removed from that program on December 3, 2025. (Doc. 11–1, at 3, at ¶ 13; Exhibit 9 at Doc. 11–1, at 16.) The Report also provides that Plaintiff has never been forced to eat pork at the SCJ because the SCJ does not serve pork to any inmates, whether on a special diet or a regular diet. *Id*. at 3, ¶ 14. The Report states that although Plaintiff is restricted from participating in programs, which includes church service in the multi-purpose room, he remains able to obtain and utilize religious texts, access religious materials on his table, meet with clergy, or otherwise exercise his religion if he so chooses. *Id*. at 2, at ¶ 7.

Courts have held that a prisoner's religious beliefs are not sincerely-held based upon evidence of non-compliance with their religious diet. *See, e.g., Ford v. Fed. Bureau of Prisons*, 2011 WL 2415790, at *10 (D. Colo. 2011) ("The defendants have demonstrated with unrefuted evidence, however, that the plaintiff does not comply with all of the dietary practices which he claims are essential to his faith. . . . The unrefuted evidence concerning his commissary purchases establishes, to the contrary, that the plaintiff's asserted religious beliefs, insofar as they concern

limitations on his diet as set out in the *How to Eat to Live* books, are not sincerely held."). Although the Report includes the incident reports regarding Plaintiff's three violations of the special diet rules, Plaintiff disputes the findings in the Report.

Plaintiff responded to the Report with a pleading titled "Motion for Jury Trial," claiming that "all officers['] statements are incorrect" and that "[a]ll officers['] statements are lies" and "made up with no evidence." (Doc. 12.) "A *Martinez* Report may not be used . . . 'to resolve . . . a [bona fide factual] dispute' . . . or to determine whether a complaint states a plausible claim for relief." *Martin v. Schnurr*, 2026 WL 1194984, at *4 (10th Cir. May 1, 2026) (unpublished) (citations omitted).

### D. Due Process Claim

Plaintiff's response to the Report also states that "[t]he marker was found on the floor which another inmate dropped and I turned it in." (Doc. 12.) Plaintiff claims that no disciplinary procedure was followed as directed in the rule book, and that Defendant Miller "decided she was judge, jury, and executioner and did not go by writing up a disciplinary report." *Id*. Plaintiff states that he had "no say" and Defendant Miller "took away [his] rights to go to church and [his] religious diet as punishment." *Id*. As set forth above, Plaintiff claims in the response that "[a]ll officers['] statements are lies" and "made up with no evidence." *Id*.

"[T]he Fourteenth Amendment 'prohibits *any* punishment' of a pretrial detainee without due process." *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (unpublished) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment)). "[A] showing of an expressed intent to punish on the

part of detention facility officials"—standing alone—is sufficient to demonstrate "the disability is imposed for the purpose of punishment." *Id*. (citing *see Bell*, 441 U.S. at 538; *see also Blackmon*, 734 F.3d at 1241). Intentionally punishing a pretrial detainee by placing him on disciplinary status or in disciplinary segregation without giving him an opportunity to be heard violates his due process rights. *Id*.

The Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id*. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*. The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

In *Reed v. Bryant*, the court addressed a policy "that requires suspension if an inmate participating in a religious diet program consumes or possesses food not included in the religious diet." *Reed v. Bryant*, 719 F. App'x 771, 773 (10th Cir. 2017) (unpublished). Under the policy at issue, "an inmate who violates this requirement is automatically suspended from the religious diet program for 30 days for the first violation, 120 days for the second violation and for one year for

every subsequent violation." *Id*. at 774. "This type of provision in a prison's religious diet program is sometimes referred to as a 'zero-tolerance rule.'" *Id*. The inmate denied the accusation that he ate non-kosher food, claimed that he was falsely-accused, and sought prospective injunctive relief against the policy. *Id*. at 774–76. The Tenth Circuit remanded the case for the district court to address the plaintiff's due process violation, stating that:

> A protected liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (citations omitted).[] Constitutional rights provided by the First Amendment are liberty interests under the Due Process Clause. *See Procunier v. Martinez*, 416 U.S. 396, 417, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (holding that a prisoner interest grounded in the First Amendment "is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment"), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *see also Washington v. Glucksberg*, 521 U.S. 702, 719-20, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (stating Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests[,] . . . [including] the specific freedoms protected by the Bill of Rights"). If a liberty interest is established, then the adequacy of the prison's procedures is assessed by balancing three factors: (1) the private interest affected by the government action; (2) " 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards' "; and (3) the State's interest, " 'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *Wilkinson*, 545 U.S. at 224-25, 125 S.Ct. 2384 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

*Id*. at 776–77 (footnote omitted).

The plaintiff in *Reed* was seeking prospective injunctive relief against the zero-tolerance policy. *See id*. Plaintiff in the current case has not sought injunctive relief. Plaintiff's Amended Complaint only seeks compensatory damages and the Court has found that compensatory damages

are unavailable.  The Court is giving Plaintiff an opportunity to clarify whether or not he is seeking injunctive relief.

## IV.  Response Required

Although Plaintiff has responded to the Report in his "Motion for Jury Trial," the Court will grant Plaintiff another opportunity to respond to the Report.  Plaintiff should indicate what relief he is seeking.  The Court has found that Plaintiff is not entitled to compensatory damages. Plaintiff has not sought injunctive relief.  Plaintiff was sentenced to 10 days of disciplinary segregation in January 2026, so any request for injunctive relief relating to his segregation appears to be moot.  Plaintiff does not indicate whether or not he has sought or been denied the opportunity to make a new religious diet request or whether or not he has made any requests to participate in church services.  Plaintiff should indicate what injunctive relief, if any, he is seeking.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's court access claim is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's request for compensatory damages is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **July 6, 2026,** to respond to the Report at Doc. 11 and to address the deficiencies noted in this Memorandum and Order.

**IT IS SO ORDERED**.

**Dated June 3, 2026, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

11